IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

ALBERTO JOSE SIMANCA
GONZALEZ,

       PETITIONER,

v.              CIVIL ACTION NO. 3:26-0055

CARL ALDRIDGE,
Superintendent, Western Regional Jail;
MICHAEL T. ROSE,
Acting Field Office Director, Philadelphia Field Office,
United States Immigration and Customs Enforcement;
TODD M. LYONS,
Acting Director,
United States Immigration and Customs Enforcement;
KRISTI NOEM,
Secretary of Homeland Security;
PAMELA JO BONDI,
United States Attorney General,
in their official capacities,

       RESPONDENTS.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Petitioner Alberto Jose Simanca Gonzalez's Verified Petition for Writ of Habeas Corpus. ECF No. 1. Also pending is a Motion to Dismiss filed by Federal Respondents ("the Government") Michael T. Rose, Acting Field Office Director, Philadelphia Field Office of United States Immigration and Customs Enforcement; Todd M. Lyons, Acting Director of United States Immigration and Customs Enforcement; Kristi Noem, Secretary of Homeland Security; and Pamela Jo Bondi, United States Attorney General. ECF No. 10. Carl

Aldridge, Warden of Western Regional Jail and Correction Facility, is also a respondent.[1]

For the reasons set forth below, in accordance with the Order entered yesterday, ECF No. 20, directing the immediate release of Petitioner and prohibiting Petitioner's re-detention absent specified conditions, the Court **GRANTS** Petitioner Alberto Jose Simanca Gonzalez's Verified Petition for Writ of Habeas Corpus, ECF No. 1, and **DENIES** Respondents' Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus. ECF No. 10. The Court proceeds with an explanation of Petitioner's entitlement to relief.

I. Background

This case is one of many pending in the Southern District of West Virginia and throughout the nation challenging the arrest and civil detention, without custody determinations, of undocumented individuals residing in the United States, arrested based on their immigration status alone. While this Court is not an immigration court, this Court is responsible for upholding the United States Constitution and must evaluate the legality of the detention before it.

Petitioner Alberto Jose Simanca Gonzalez was arrested and detained by United States Immigration and Customs Enforcement ("ICE") officers while traveling on Interstate 77 on January 18, 2026. *Verified Pet. for Writ of Habeas Corpus ("Pet.")* ¶¶ 8, 16, ECF No. 1. He petitions the Court, pursuant to 28 U.S.C. § 2241, challenging his ongoing detention in the custody of ICE at Western Regional Jail in Barboursville, West Virginia. *Id.* ¶ 1.

According to the Petition, Petitioner entered the United States in June of 2022. *Id.* ¶ 15. The Government's documentation on a Form I-213 indicates that on June 25, 2022, Petitioner was released and given an Form I-94 that stated he was being temporarily paroled under "212(d)" "as

---

[1] Mr. Aldridge responds separately that he "should be treated as nothing more than a nominal Respondent" and "defers to the Federal Respondents' position." *Resp. by Carl Aldridge.* 2, ECF No. 9.

an Alternate to Detention . . . due to detention capacity at the Eagle Pass South Station Sub: Soft-Sided Facility." *2022 Form I-213,* Gov't's Ex. A, ECF No. 10-1, at 1–2; *Form I-94*, Gov't's Ex. B, ECF No. 10-2. On June 22, 2023, he applied for asylum, according to Petitioner, based on a fear of political persecution in Venezuela. *Pet.* ¶ 15; *Form I-797C*, Pet'r's Ex. A, ECF No. 18-1. Petitioner claims he received work authorization, paid taxes, and was starting a business while waiting for his asylum interview this upcoming fall. *Pet.* ¶ 15. That is, until his detention. On January 21, 2026, a few days following his detention, a new Form I-213 was issued and apparently served. *2026 Form I-213*, Gov't's Ex. C, ECF No. 10-3. This form states, under current administrative charges, that he was "present without admission or parole" even though the Government produced no documentation that his parole status had been terminated. *Id.*, ECF No. 10-3, at 2.

Petitioner claims that his detention is not based on any criminal conviction or charge and is civil and administrative in nature. *Id.* ¶ 17. Further, Petitioner states no immigration officer, decisionmaker or judge has conducted a custody determination to assess whether continued confinement is justified or necessary. *Id.* ¶¶ 19–20. For this reason, Petitioner seeks relief of immediate release, arguing his detention violates his Fifth Amendment right to Due Process; the Immigration and Nationality Act, 8 U.S.C. § 1226; the Administrative Procedure Act; the Equal Protection Clause of the Fifth Amendment; and the Suspension Clause. *Id.* ¶¶ 3, 44, 46, 55, 60, 67, 73.

Petitioner also filed an Expedited Motion for an Order to Show Cause and Immediate Order Preventing Removal or Transfer of Petitioner, ECF No. 2, which the Court granted. *O.S.C. and Temp. Enjoining Transfer of Pet'r Pending Disposition of Pet.*, ECF No. 6. The Court stayed removal of Petitioner from this district pending further order of the Court. *Id.* The Government

filed a Response and Motion to Dismiss on January 29, 2026, the Petitioner's Reply was filed on February 2, 2026, and argument was heard on February 3, 2026. *Gov't's Resp. to O.S.C. concerning Pet. for a Writ of Habeas Corpus and Mot. to Dismiss Pet'r's Pet. for Writ of Habeas Corpus ("Resp.")*, ECF No. 10; *Pet'r's Reply to Resp. ("Pet'r's Reply")*, ECF No. 18.

## II.     Legal Standard

A petitioner may be entitled to habeas corpus relief if a district court determines the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (citations omitted); 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving unlawful custody by a preponderance of the evidence. *Post v. Boles*, 332 F.2d 738, 740 (4th Cir. 1964); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 WL 2802947, at *3 (D. Minn. Oct. 1, 2025).[2] "The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## III.     Discussion

A. Jurisdiction

First, the Government argues this Court lacks jurisdiction over the petition based upon 8 U.S.C. §§ 1252(g) and 1252(b)(9).[3] This Court is not persuaded and rejects each argument in turn.

The Government argues 8 U.S.C. § 1252(g) bars this Court's review. *Resp.* 2, 8. The Fourth

---

[2] According to Petitioner and unopposed by Respondent. *Pet.* ¶ 27.
[3] At the hearing before this Court on February 3, 2026, the Government withdrew its argument that 8 U.S.C. § 1252(e)(3) barred judicial review in this case. *Resp.* 7; *Hr'g Tr.* 11:1-10. "[A] Court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted). Section 1252(e), titled "[c]hallenges on validity of the system," establishes that questions of the constitutionality and legality of Section 1225(b) are subject to judicial review "in an action instituted in the United States District Court for the District of Columbia." 8 U.S.C. § 1252(e)(3). This Court's review of this Petition is not barred by Section 1252(e)(3) because Petitioner challenges the lawfulness of *his* detention, not a general challenge to the validity of the system relating to the implementation of 8 U.S.C. § 1225(b).

Circuit has instructed that the limitation of judicial review under Section 1252(g) is narrow and "cabined to three discrete actions: a decision to *commence* proceedings, *adjudicate* cases, or *execute* removal orders," none of which are present in this case challenging detention. *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *7 (4th Cir. July 1, 2025) (emphasis added) (citation modified). The Government's contention, raised during the hearing on February 2, 2026, that the differing underlying constitutional violation in *Suri* alters its application to this case, is unpersuasive considering the Fourth Circuit addresses that the Supreme Court "specifically rejected the idea that § 1252(g) stripped federal courts of jurisdiction over habeas challenges to present immigration confinement." *Id.* (citing *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001)).

The Government argues 8 U.S.C. § 1252(b)(9) limits this Court's review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States." *Resp.* 2, 9. This argument, too, has been directly addressed and denied by the Fourth Circuit which determined that the bar under Section 1252(b)(9) only applies to the review of orders of removal. *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 697 (4th Cir. 2019) (citing *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)). The Court is not undertaking a review of an order of removal, so it is not barred under Section 1252(b)(9).

B.  Exhaustion[4]

The Government next argues that the Petition should be dismissed for Petitioner's failure to exhaust administrative remedies by not requesting a bond hearing prior to this action. *Resp.* 11.

---

[4] The Government raises the same argument that the supposed opportunity for relief through a request for a bond hearing bars Petitioner's Administrative Procedure Act claim. *Resp.* 12. The Court is unconvinced but need not reach a conclusion given Petitioner's entitlement to relief on alternative grounds.

More persuasive is Petitioner's response that such an attempt would be futile given the Board of Immigration Appeals ("BIA") decision, binding on all Immigration Judges, in *Yajure Hurtado,* 29 I&N Dec. 216 (BIA 2025).[5] In September of 2025, the BIA affirmed that Immigration Judges do "not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under Section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Hurtado,* 29 I&N Dec. at 220. The Government contends Petitioner is being held pursuant to 8 U.S.C. § 1225(b)(2)(A), relying on the BIA's statutory interpretation. For this reason, the request for a bond hearing for this Petitioner would be futile. A court may waive the exhaustion requirement in the circumstance where an administrative body has predetermined the issue before it. *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992)).

C. Basis for Detention

The Court must determine whether Petitioner's detention falls under 8 U.S.C. § 1226(a) or 8 U.S.C. § 1225(b)(2)(A). Petitioner opposes the Government's contention that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). *Resp.* 24; *Pet.* ¶ 73.

The Court first evaluates the statutory language to determine if a plain, unambiguous meaning can be derived. *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 100 (2012). Statutory language cannot be "construed in a vacuum" and "must be read in their context and with a view to their place in the overall statutory scheme." *Id.* at 101 (citation omitted). The Court must "presume" that "the legislature says what it means and means what it says." *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022).

---

[5] The Government makes contradictory arguments given its reliance on *Hurtado,* 29 I&N Dec. 216, to suggest Petitioner is not entitled to a bond hearing. *Resp.* 17.

Under Section 1225(a)(1), an "applicant for admission" includes "[a]n alien present in the United States who has not been admitted or who arrives in the United States. . .." 8 U.S.C. § 1225(a)(1). As explained by the Supreme Court in *Jennings v. Rodriguez*, an "applicant for admission" falls into one of two categories: Section 1225(b)(1) and 1225(b)(2). *Jennings*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to those initially determined to be inadmissible for fraud, misrepresentation, or lack of valid documentation. *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i) which references 8 U.S.C. §§ 1182(a)(6)(C), (a)(7)). [6]

On the other hand, and applicable to the discussion here, is Section 1225(b)(2) which was explained to be a "catchall" applying to those not covered by Section 1225(b)(1). *Id.* Section 1225(b)(2) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). While Section 1225(b)(2) mandates detention, applicants for admission can be released on temporary parole "for urgent humanitarian reasons or significant public benefit," and such parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been deemed served "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

The Supreme Court distinguishes parts of Section 1225 from Section 1226, however, stating that "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission*

---

[6] Other undocumented individuals and corresponding procedures fall within Section 1225(b)(1), however, neither party raises on this authority as the basis for detention.

into the country under §§1225(b)(1) and (b)(2)," and that "[i]t also authorizes the Government to detain certain aliens *already in t*he country pending the outcome of removal proceedings under §§1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added).

Section 1226, titled "Apprehension and detention of aliens," in part, provides that "[o]n a *warrant issued* by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Under the discretionary detention of 8 U.S.C. § 1226(a), undocumented individuals "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Conversely, Sections 1225(b)(1) and 1225(b)(2) "mandate detention of applicants for admission until certain proceedings have concluded. . . [No]thing in the statutory text imposes any limit on the length of detention [or] says anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297.

To provide context, in the past year, the BIA has altered the longstanding position that discretionary detention under 8 U.S.C. § 1226(a) applies to undocumented individuals who have been in the country for long periods of time. *Hurtado*, 29 I&N Dec. at 228 n.6. [7] Now, the agency considers all undocumented "applicants for admission" to be subject to mandatory detention, without eligibility for bond hearings, under 8 U.S.C. § 1225. *Resp.* 18–19 (citing *Hurtado*, 29 I&N Dec. at 228 n.6; *Matter of Q. Li*, 29 I&N Dec. 66, 69 (BIA 2025)). This Court, along with many

---

[7] "We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection. . . . Immigration and Naturalization Service [(DHS predecessor)] took the position at that time that '[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination.'" *Hurtado,* 29 I&N Dec. at 228 n.6. (citing Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

others, finds the agency's new interpretation is contrary to the statutory text, historical context, and Supreme Court precedent.

The Government contends Petitioner is properly detained under Section 1225(b)(2)(A), claiming Petitioner is "an alien . . . found to be present in the United States without having been admitted such that he is an 'applicant for admission.'" *Resp.* 15. The Government claims "applicants for admission" is synonymous with the category of those "seeking admission." *Id.* at 19–20. Petitioner argues the Government's conflation of the elements of "an applicant for admission" and "seeking admission" within Section 1225(b)(2)(A) is improper given the ordinary meaning of the words "seeking" and "admission." *Pet'r's Reply* 9. Further, Petitioner's status is more accurately described as "seeking lawful entry" than "seeking admission." Petitioner has lived in the United States since 2022 and was paroled into the country soon after he entered. *Id.* at 13. Petitioner claims that conflating the two elements would effectively remove the text "seeking admission" contrary to the "rules against surplusage." *Id.* at 12 (citing *Lopez Benitez v. Francis*, 795 F.Supp.3d 475, 488 (S.D.N.Y. 2025) (citing *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning.")).

Petitioner next argues that the Government's interpretation would render a large part of the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025), amendment of the INA in 2025 to be meaningless. *Pet'r's Reply* 12. The expansion of individuals subject to mandatory detention under the Laken Riley Act would already be within the purview of the Government's interpretation of 8 U.S.C. § 1225. The Laken Riley Act expanded the category of undocumented individuals subject to mandatory detention under Section 1226(c) to include any individual that is "inadmissible under paragraph (6)(A) ["Aliens present without admission or parole"], 6(C) ["Any alien who, by fraud

or willfully misrepresenting a material fact. . ..."], or (7) ["any immigrant at the time of application for admission" without valid documentation] of 212(a)" and is "charged with . . . arrested for . . . convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). If Section 1225(b)(2)(A) was already meant to authorize mandatory detention of any "inadmissible" individual living within the United States, the expansion of the category of undocumented individuals subject to mandatory detention within Section 1226(c) would unnecessarily overlap with Section 1225(b)(2)(A). The Government argues that the proposed redundancy in Section 1226 and Section 1225 was intended to be "doubly sure" that certain groups of undocumented individuals are detained. *Resp.* 22 (citation omitted). Further, that "[t]o interpret 8 U.S.C. § 1225(b)(2)(A) as not applying to all applicants for admission would render it meaningless." *Id.* The Court disagrees. The Government's interpretation disregards the broader statutory scheme, renders clauses within Section 1225(b)(2)(A) and the Laken Riley Act meaningless, and ignores decades of prior statutory interpretation.

Petitioner's interpretation is consistent with the overwhelming majority of district court decisions rendering similar mandatory, unreviewed detentions of long-term resident noncitizens without criminal records to be within the purview of 8 U.S.C. § 1226(a). *See Bethancourt Soto v. Soto*, --- F.Supp.3d ----, No. 25-cv-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (collecting cases); *see also Barco Mercado v. Francis*, --- F.Supp.3d ----, No. 25-cv-6582 (LAK), 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases). The Court makes an independent determination that comes to the same conclusion; Petitioner's detention is governed by Section 1226(a).

Petitioner's I-213 Form shows that Petitioner was paroled into the interior of the United States in June of 2022 with a I-94 as an "Alternate to Detention as a Condition of Parole" due to the capacity at the detention facility. *2022 Form I-213,* Gov't's Ex. A, ECF No. 10-1, at 1–2. At that point, Petitioner was determined to be a candidate for parole. Petitioner seemingly has no criminal record and nothing has changed since such parole determination to warrant mandatory detention. The Government argues Petitioner's temporary parole in 2022 continues to render him an "applicant for admission," and that, as such, mandatory detention under 8 U.S.C. § 1225 applies pending removal proceedings pursuant to 8 U.S.C. § 1229a. *Resp.* 15–16. The Government argues such action functionally reverts Petitioner to his immigration status at the border, but the Court disagrees. *Resp.* 15.

According to Petitioner, he is lawfully present in the United States given that his parole was not properly revoked. *Pet'r's Reply* 15. Both parties agreed at the hearing before this Court on February 3, 2026, that revocation of parole is governed by 8 C.F.R. § 212.5(e)(2). *Hr'g Tr.* 12:4–25; *Pet'r's Reply* 13–14. Section 212.5(e)(2)(i) states in part that, "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." Petitioner claims that when he was arrested in January of 2026, he had not been served with a Notice to Appear, had no notice of placement in removal proceedings, nor was he provided with an immigration court date. *Pet'r's Reply* 13–14. The Form I-213 was issued and apparently served days after his arrest. *2026 Form I-213*, Gov't's Ex. C, ECF No. 10-3. The "Notice to Appear" put forth by the Government does not contain a date and provides for a hearing on November of 2024, additionally, the portion certifying service is left blank. *See Form 1-862 NTA 616*, Gov't's Ex. D, ECF No. 10-4, at 1. When asked about the incomplete and seemingly merged document, the Government stated, "we recognize that the document is

defective." *Hr'g Tr.* 27:15-16. While the Government contends alleged initiation of removal proceedings and admittedly defective documentation satisfies the requirement of "charging documents served" to Petitioner under Section 212.5(e)(2)(i), Petitioner argues that, even if Petitioner was served, a valid decisionmaker did not make an individualized consideration as required. 8 C.F.R. 212.5(e)(2); *Hr'g Tr.* 15:20–16:22; *Pet'r's Reply* 15 (citing *Darwich v. Kemerling*, No. 1:25-CV-1162, 2026 WL 170801, at *5–6 (M.D.N.C. Jan. 22, 2026)).

Additionally, the Petitioner's June of 2023 Notice from the Department of Homeland Security suggests he applied for "asylum and withholding of removal." *Form I-797C*, Pet'r's Ex. A. The document contains language specifying: "You may remain in the U.S. until your asylum application is decided." *Id.* While the next sentence indicates, "[h]aving a pending asylum application with USCIS does not preclude . . . ICE or U.S. Customs and Boarder Protection (CBP) from placing you in removal proceedings," Petitioner had already developed liberty interests, and, as such, the expectation of due process prior to detention is reasonable given that the Due Process Clause of the Fifth Amendment applies to all individuals within the United States. *Id*; *Zadvydas*, 533 U.S. at 693. The Court agrees with Petitioner and now evaluates if Petitioner's Due Process rights were violated.

D.  Due Process

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

The Court evaluates due process rights under the balancing test contained within *Mathews v. Eldridge*, 424 U.S. 319 (1976). The *Mathews* framework calls for the consideration of (1) "the

private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court finds Petitioner's physical liberty is being deprived through civil detention. The deprivation of liberty by imprisonment "lies at the heart of" the due process clause protections. *Zadvydas*, 533 U.S. at 689. The risk of erroneous deprivation is great considering the Government wrongly contends it is holding Petitioner pursuant to the mandatory and unreviewed detention provision of Section 1225. The first two considerations outweigh the Government's interest in detention without bond, which under Section 1226(a) occurs based on the Immigration Judge's discretionary determination that there is a risk of harm to the public or risk of failure to appear. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). The Government does not contend either circumstance is present here. Based on the foregoing factors, Petitioner's due process rights have been violated.

Considering the present detention is more accurately characterized under Section 1226(a), Petitioner's arrest would require a warrant or exception justifying the absence of one, and Petitioner would be entitled to an individualized custody determination, neither of which were seemingly satisfied here. Additionally, in *Miranda v. Garland*, the Fourth Circuit found the procedure within Section 1226 to be constitutional when it involved an individualized custody determination by an immigration officer "almost immediately" after detention, and a second opportunity for a bond hearing before an Immigration Judge "soon thereafter." *Miranda*, 34 F.4th 338, 362 (4th Cir. 2022). Petitioner has not received such treatment considering he has been detained in multiple facilities throughout West Virginia since January 18, 2026. Petitioner's

detention is unlawful, and his release is the appropriate remedy.

IV. Conclusion

For the foregoing reasons, the Court granted Petitioner Alberto Jose Simanca Gonzalez's Verified Petition for Writ of Habeas Corpus, ECF No. 1, ordered his immediate release from custody, and prohibited re-detention of Petitioner absent a determination by a neutral and detached decisionmaker or change in circumstances justifying such detention.[8] ECF No. 20. The Court **DENIES** Respondents' Motion to Dismiss Petitioner's Petition for Writ of Habeas Corpus. ECF No. 10.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 5, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[8] Petitioner requests attorneys' fees and costs under the Equal Access to Justice Act ("EAJA") (*Pet.* at 16) which allows the "award [of] reasonable fees and expenses of attorneys" to a "prevailing party in any civil action brought by or against...any agency or any official of the United States acting in his or her official capacity...." 28 U.S.C. § 2412(b). In *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021), the Fourth Circuit held that attorneys' fees relating to a habeas petition are not available under the EAJA because such a petition is not a "civil action" for purposes of the EAJA. *Id.* at 194, 197. The Court, therefore, denies Petitioner's request for attorneys' fees and costs under the EAJA.